**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY JOHNSON, : | |
| : | |
| Plaintiff, : | Civil No. 11-3588 (RMB) |
| : | |
| v. : | |
| : | |
| CAMDEN COUNTY PROSECUTORS' : | **OPINION** |
| OFFICE, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

**ANTHONY JOHNSON**, Plaintiff pro se
#43472-066
F.D.C. Philadelphia
P.O. Box 420
Philadelphia, P.A. 19105

**HOWARD LANE GOLDBERG**, Counsel for Prosecutor Defendants
Office of Camden County Counsel
520 Market Street
Courthouse - 14TH Floor
Camden, N.J. 08102-1375

**BUMB**, District Judge

    Plaintiff Anthony Johnson ("Plaintiff") seeks to bring this action in forma pauperis.  Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

    At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, to determine whether it should

be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part at this time.

**I. BACKGROUND**

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the Camden County Prosecutors' Office; Patrolman McDonald; Prosecutor Grace Clodfelter; Patrolman McKillop; Patrolman Sgrignuoll; Sergeant Quintavalle; Supervisor Chris Jones; and Detective Stollstlerner.[1]  The following factual allegations are taken from the complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

On September 9, 2009, Plaintiff along with Kevin Spence, Daphine Hill and Michele Salamone stopped at a convenience store in Sicklerville, New Jersey.  Ms. Hill and Ms. Salamone went inside. After they returned to the car, all four individuals left the store parking lot in a car but were pulled over by Gloucester County police not far down the road.  Defendant Jones, one of the officers, asked Ms. Hill to step out of the car and asked her questions about the credit card she used at the convenience store.

---

[1] Though named as defendants, the body of the complaint does not contain any allegations against Defendants McDonald or Stollstlerner and as such, they will be dismissed without prejudice.

She told Defendant Jones that it was her aunt's card. She was then placed under arrest.

The other passengers, including Plaintiff, were asked to get out of the car and to provide identification. Defendant Jones asked both Mr. Spence and Plaintiff for consent to search the vehicle and both said no. Plaintiff told Defendant Jones that he had done nothing wrong and Defendant Jones told him to "shut up" and that they "don't play interracial relationships over here." All the passengers were placed in handcuffs and taken to the police station, without being read their Miranda rights. Plaintiff asked if they were under arrest and he was informed no. Plaintiff was held at the police station for nineteen hours against his will. Ms. Hill and Ms. Salamone admitted committing credit card cash withdrawals. Ms. Salamone, a Caucasian female, was released. Ms. Hill, an African-American female, was released on her own recognizance. Mr. Spence posted bail and was released. Plaintiff was remanded to the Camden County Correctional Facility. Hill and Spence plead guilty to the thefts and are still incarcerated. Plaintiff's case is still pending. Salamone was allowed to keep the stolen proceeds from the thefts.

Plaintiff alleges a claim pursuant to the Fourth Amendment for illegal search and seizure based on the officers' stop of the car without probable cause and failure to release Plaintiff when his name came back clear with no warrants. He alleges a Sixth

Amendment claim based on the fact that Ms. Salamone was released and therefore Plaintiff was not able to confront his accuser. Further, he was not read his Miranda rights. Finally, Plaintiff alleges a Fourteenth Amendment claim based on selective enforcement because the only Caucasian occupant of the car was released, while the African-American occupants were arrested.

Plaintiff requests one hundred thousand dollars in compensatory damages and five million dollars in punitive damages from each of the Defendants.

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED.R.CIV.P. 8(a)(2).  Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S.Ct. at 1948).  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  See Iqbal, 129 S.Ct. at 1949-50.  See also Twombly,

5

505 U.S. at 555, & n. 3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**B. Analysis**

**1. Selective Enforcement/Arrest Without Probable Cause**

Plaintiff alleges that there was no probable cause for his

arrest and that he was arrested because he is African-American, while a Caucasian woman who was in the car with him was not arrested.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989) (citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

"Probable cause ... requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482–83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964))).

Here, Plaintiff alleges that the arrest was based on an improper racial motive—that he was arrested because he is African-American while a Caucasian woman with him who confessed to the

7

crime was not. To establish such a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993)).

Finally, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F.Supp.2d 743, 755 (D.N.J. 1999) (citing Groman). See also Anela v. City of Wildwood, 595 F.Supp. 511, 512 (D.N.J. 1984) (holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[2]

Plaintiff alleges that he was arrested without probable cause because when the police officer ran his name through the computer, it came back clear, with no warrants. He further alleges that his

---

[2] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

arrest was racially motivated because the only Caucasian person in the car was not arrested, while he and the other African-American occupants were arrested.  He also alleges that the officers made racially inappropriate remarks to him during the course of the arrest and at the station.  At this early juncture, Plaintiff has alleged sufficient facts to allow these claims to proceed past sua sponte screening as against Defendants McKillop, Sgrignuoll, Quintavalle and Jones.[3]

**2. Right to Confront Accuser**

Plaintiff appears to allege that his Sixth Amendment rights were violated when the police released Ms. Salamone from custody, thereby depriving him of his right to confront his accuser.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.  However, the Supreme Court has stated that "the right to confrontation is a *trial* right." Pennsylvania v. Ritchie, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (emphasis in original) (citing California v. Green, 399 U.S. 149 (1970); Barber v. Page, 390 U.S. 719, 725 (1968)).  Courts have repeatedly held

---

[3] Although the Complaint states a claim sufficient to avoid dismissal at this time, the Court is mindful that Plaintiff's criminal case is still ongoing and that the action may need to be stayed, pursuant to Wallace v. Kato, 549 U.S. 384 (2007), or dismissed without prejudice, pursuant to Heck v. Humphrey, 512 U .S. 477 (1994), as the facts become developed.

that the Sixth Amendment right to confrontation does not extend to the pre-trial context. U.S. v. Moruzin, 2007 WL 2914903, at * 3 (D.N.J. October 01, 2007) (citing United States v. Matlock, 415 U.S. 164, 174-75 (1974) (noting the inapplicability of the defendant's confrontation rights to a suppression hearing); cf. United States v. Salerno, 481 U.S. 739, 751 (1987) (assessing the statutory confrontation rights of detainees at Bail Reform Act detention proceedings under the Fifth Amendment's due process clause without indicating that the Sixth Amendment is implicated); United States v. Sanchez, 988 F.2d 1384, 1392 (5th Cir. 1993) ("The right to confront does not extend to non-trial, in camera settings.")).

Plaintiff does not allege that his Sixth Amendment right to confrontation was violated in any criminal trial context. He alleges only that by allowing Ms. Salamone to leave the police station, his rights were violated. This does not set forth an adequate constitutional claim and as such, will be dismissed as to all defendants.

**3. Miranda Warning**

Plaintiff alleges that his Fifth and Sixth Amendment rights were violated when Defendant Jones failed to read him his Miranda rights.

The Supreme Court's opinion in Miranda v. Arizona, 384 U.S. 436 (1966), prohibits the government from using "statements,

10

whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Miranda requires that, prior to a custodial interrogation, police must warn a person that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be provided. Id. at 479. The problem with Plaintiff's § 1983 claims based on the failure to read him his rights is that "questioning a plaintiff in custody without providing Miranda warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against [him] at trial." Renda v. King, 347 F.3d 550, 557-58 (3d Cir. 2003); see also Chavez v. Martinez, 538 U.S. 760 (2003). In this case, it is not even clear that Plaintiff made any statements, and if he did, it certainly does not appear that any statements were used against him. Therefore, this Court will dismiss the claim without prejudice against all defendants for failure to state a claim upon which relief may be granted.

**4. Conspiracy Pursuant to 42 U.S.C.§§ 1985 and 1986**

Plaintiff alleges a conspiracy between the Gloucester Township Police Department and the Camden County Prosecutor's Office pursuant to 42 U.S.C. §§ 1985 and 1986. He states that "by law enforcement and prosecutors choosing to allow the Caucasian female

11

(Salamone) to go free without any charges and only charging the black occupants of the vehicle, they deprived the plaintiff of his right to remain free and threatened his livelihood to be secure in society, with the same equally protected rights as that of both male and female Caucasians."

42 U.S.C. § 1985 states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented...

In his complaint, Plaintiff only states in a conclusory manner that a conspiracy exists between the police department and the

12

prosecutor's office. He provides no facts in support of his allegation of a conspiracy other than the fact that he was arrested while Ms. Salamone was not. As such, this claim must be dismissed against all defendants for failure to state a claim at this time.

### 5. Claims Against the Prosecutors' Office

To the extent Plaintiff attempts to assert a claim for malicious prosecution against the Camden County Prosecutors' Office, the Complaint fails to state a claim. A constitutional claim for malicious prosecution in the Third Circuit requires a plaintiff to establish five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). See also Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007); Helmy v. City of Jersey City, 178 N.J. 183, 836 A.2d 802, 806 (N.J. 2003) (citing Lind v. Schmid, 67 N.J. 255, 337 A.2d 365, 368 (N.J. 1975)). "'Failure to prove any one of these ... elements denies the plaintiff a cause of action for malicious prosecution.'" Wilson v. N.J. State Police, No. 04-1523, 2006 WL 2358349, at *9,

2006 U.S. Dist. LEXIS 60514 (D.N.J. Aug. 15, 2006) (quoting Wiltz v. Middlesex County Office of the Prosecutor, No. 05-3915, 2006 WL 1966654, at * 9, 2006 U.S. Dist. LEXIS 46821 (D.N.J. July 12, 2006)).

Here, Plaintiff specifically states in his complaint that his criminal proceeding is still pending. Therefore, because the outcome of Plaintiff's state criminal proceedings is not yet determined, any malicious prosecution claim he asserts against the prosecutor defendants must be dismissed without prejudice at this time.[4]

**6. Request for Pro Bono Counsel**

Plaintiff filed an application for appointment of pro bono counsel. (Docket Entry No. 3.) He seeks counsel because his "imprisonment will greatley [sic] affect his ability to litigate [and] the issues involved in this case are complex and will require significant research and investigation."

Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte*. See Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994). The plaintiff has no right to counsel in a civil case. See id. at 153-54; Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).

---

[4] Since all claims against the Camden County Prosecutors Office and its attorneys are being dismissed, the motion to dismiss filed by these defendants (Docket Entry No. 2) is hereby dismissed as moot.

14

In evaluating a motion to appoint counsel, the court must first examine the merits of Plaintiff's claim to determine if it has "some arguable merit in fact and law."  See Tunnell v. Gardell, 2003 WL 1463394 at * 1 (D. Del. Mar. 14, 2003)(Slip Copy)(citing Parham, 126 F.3d at 457)(other citations omitted).  If the court is satisfied that the claim is "factually and legally meritorious," then the following factors must be examined:  (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf.  See id. (citing Parham, 126 F.3d at 457-58; Tabron, 6 F.3d at 155-56, 157 n.5).  However, a court should also consider other factors, such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time.  See Tabron, 6 F.3d at 157-58.

In the instant case, defendants have not yet been served with the complaint.  Further, whether or not the Plaintiff's claims have merit, the factual and legal issues "have not been tested or developed by the general course of litigation, making [a number of factors] of Parham's test particularly difficult to evaluate."

15

Chatterjee v. Philadelphia Federation of Teachers, 2000 WL 1022979 at *1 (E.D. Pa. July 18, 2000)(stating that unlike Parham, which concerned a directed verdict ruling, and Tabron, which involved summary judgment adjudication, plaintiff's claims asserted in complaint and motions "have barely been articulated" and have distinctive procedural posture).

With regard to the Tabron/Parham factors, Plaintiff has not demonstrated, at this stage of proceedings, the complexity of legal issues, the degree to which factual investigation will be necessary, or that he will be in need of expert witnesses. Without the assistance of counsel, Plaintiff has already presented a coherent complaint asserting various points of law, several letters and the instant motion for appointment of counsel to this Court.

The Court recognizes that issues may arise in the course of this litigation which may raise a question as to Plaintiff's need for counsel. In that case, the Court will consider a renewed motion for appointment of counsel. At this point in the litigation, however, the Plaintiff's motion for appointment of counsel will be denied, without prejudice.

### III. CONCLUSION

For the reasons stated above, Plaintiff's claims for false arrest and selective enforcement against Defendants McKillop, Sgrignuoll, Quintavalle and Jones will be allowed to proceed at this time. All other claims will be dismissed without prejudice.

An appropriate order follows.

                                                <u>s/Renée Marie Bumb</u>
                                                RENÉE MARIE BUMB
                                                United States District Judge

Dated:<u> January 31, 2012</u>