**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANTHONY JOHNSON, | : |
|  | : Civil Action No. 11-3588 |
|  | : (RMB/KMW) |
| Plaintiff, | : |
|  | : |
| v. | : **OPINION** |
|  | : |
| CAMDEN COUNTY | : |
| PROSECUTORS OFFICE, et al., | : |
|  | : |
| Defendants. | : |

**BUMB, District Judge:**

This matter comes before the Court upon Plaintiff's motion seeking to amend his original pleading, see Docket Entry No. 62.

For the reasons detailed below, Plaintiff's motion will be granted, and his original and amended complaints will be dismissed. Plaintiff will be directed to show cause as to why his two lines of challenges that survived sua sponte screening of his original complaint should not be dismissed for failure to state a claim upon which relief can be granted.

In conjunction with the same, the appointment of Plaintiff's pro bono counsel will be suspended, subject to reinstatement in the event he shows cause as to the viability of his claims that survived sua sponte screening. In the same vein, the Order issued by Magistrate Judge Karen Williams to permit Plaintiff's

deposition will be suspended, subject to reinstatement in the event Plaintiff shows cause as to the viability of these claims.

The events underlying Plaintiff's challenges raised in this matter have already been extensively detailed by this Court in its opinion issued with regard to Plaintiff's duplicative action, <u>Johnson v. Maynard</u> ("<u>Johnson-II</u>"), Civ. Action No. 11-4677 (RMB); that opinion was docketed in this matter for informational purposes, <u>see</u> Docket Entry No. 84, and it detailed the underlying facts, as they were presented in Plaintiff's <u>Johnson-II</u> pleading and the exhibits upon which he relied. <u>See</u> <u>id.</u> at 2-7.

Because the Court writes for the parties, it briefly summarizes the extensive facts as follows. On September 12, 2009, at 5 a.m., Daphne Hill ("Hill") entered a Wawa store in Sicklerville, New Jersey ("Wawa Store"), and attempted to use credit cards and a debit card to purchase cigarettes, two T-mobile gift cards and ten Visa gift cards worth one hundred dollars each. Because the credit card she initially presented was issued in the name of Anna Kelden ("Kelden"), the cashier asked Hill to produce an identification in Kelden's name. Hill produced a driver's license so issued; the driver's licence had Hill's photo on it. However, concerned with the high-dollar-value of the transactions attempted, the cashier summoned the manager who examined Hill's credit and debit cards, as well as

the driver licence she presented and noted that one of the cards had a photo different from that on the driver's license.

Realizing that such discrepancy was likely to mean that the cards and/or driver's license were either stolen or forged, or that some other form of fraud was attempted, the manager called the police. Taking notice of that development, Hill swiftly fled in a Ford SUV, which was stopped by the police not far away from the Wawa Store, since the roads were empty at that morning hour, and the vehicle description matched.

When the SUV was stopped, the officers found it occupied by Kevin Spence ("Spence"), Hill, Plaintiff and Michelle Salamone ("Salamone"). All four were ordered out of the SUV and searched; the search produced a large amount of cash, numerous stolen credit cards, fraudulent driver licenses and Social Security documents issued to other persons' names. All four were informed of their Miranda v. Arizona, 384 U.S. 436 (1966), rights and detained for further investigation. Hill entering a Miranda waiver and made a statement about her extensive fraudulent credit card schemes performed at various stores, hotels and casinos. She named Spence as her main co-conspirator but clarified that Plaintiff was the key player in the schemes since he was the one who produced all fraudulent drivers' licenses (to which he was adding Hill's photo), and he was the one who stole the credit

3

cards at local movie theaters by crawling around on the floor and going through the pocketbooks of movie-goers.

Salamone, too, entered a Miranda waiver and made a statement supporting Hill's account and implicating Spence and Plaintiff. Hill and Salamone also detailed Salamone's role, which was very limited, since Salamone met Hill, Spence and Plaintiff just two days prior to the Wawa Store incident and, while she went with them to a movie theater and took a road trip, she merely watched a movie and slept during the trip. According to both Hill and Salamone, Salamone's sole involvement in the schemes was limited to a single withdrawal of funds through the use of a credit card Salamone either knew or suspected to be stolen; she handed the entire withdrawal to Hill, Spence and Plaintiff.

Meanwhile, the police investigated the records of the SUV and found out that it was taken by Plaintiff without the SUV's owner's consent. Thus, the police obtained a search warrant as to the SUV and searched it, discovering two drivers' licenses (one Kelden's and the other falsely issued in Kelden's name, with Hill's photo), a laptop with special plastic blanks used for production of fraudulent driver's licenses, and a Fargo Card Printer (utilized to produce high-security documents verifying one's identity) with a plastic card in it, having the back of a New Jersey driver's licence already printed on one side, but the other side still left blank.

While Salamone was released, Hill, Spence and Plaintiff were charged with criminal offenses. Eventually, all three entered guilty pleas and were convicted; Plaintiff believes that Hill was the State's key witness in Plaintiff's and Spence's cases.[1]

Being already convicted in New Jersey, and then federally convicted of analogous schemes he ran in other states, Plaintiff commenced the civil matter at bar and eventually followed it with the Johnson-II matter.

In his complaint here, he alleged, inter alia, that: (a) he was not given his Miranda rights; (b) his attorney conspired with the prosecutor and the state judge to convict him; (c) the police officers and the prosecutor must have engaged in selective enforcement/selective prosecution because Salamone, a Caucasian, was released, while Hill, an African-American, was charged; (d) the SUV was stopped and Plaintiff was detained without probable cause; (e) the prosecutor maliciously prosecuted him; (f) his confrontation rights were violated by Salamone's release; (g) his prosecutor and defense attorney violated his rights individually, in addition to their allegedly conspiratorial conduct, etc. See Instant Matter, Docket Entry No. 1.

---

[1] Hill, being released on her own recognizance, violated the terms of her release. She, however, was located and returned in custody. At that point, she plead guilty and was sentenced.

5

However, unlike in Johnson-II, Plaintiff did not detail the facts associated with his arrest and charges; rather, his allegations were formulated in terms so vague that they created an impression that no Wawa Store incident ever took place, that Hill merely entered the Wawa Store for brief legitimate shopping, that the SUV was stopped and its passengers were detained and searched for no reason, that Salamone confessed to being an equal player in Plaintiff-Hill-Spence's schemes but, nonetheless, she was released because she was Caucasian, that Hill, Plaintiff and Spence, all African-American, were detained and charged, even though they were not implicated in any wrong. See id. Taking Plaintiff's allegations as true, this Court screened the original complaint for sua sponte dismissal, addressing each of Plaintiff's many challenges at great length. For the reasons detailed in the opinion docketed as Docket Entry No. 6, the Court found all of Plaintiff's challenges, short of those asserting false arrest and selective enforcement, facially deficient and dismissed them with prejudice. See also Docket Entry No. 7. The Court, however, directed service as to Plaintiff's false arrest and selective enforcement claims.

Plaintiff thereafter made a multitude of filings in this matter, substantially confusing the issues. See generally, Docket. In addition, as noted supra, he commenced his Johnson-II action. It was in the Johnson-II matter that Plaintiff detailed

the facts set forth in this Opinion, in other words, the facts omitted from Plaintiff's complaint filed in this matter.

Meanwhile, Judge Williams, addressed Plaintiff's application for appointment of pro bono counsel and, also taking Plaintiff's allegations as true, conducted the required analysis under Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993), and directed appointment of pro bono counsel. One week after moving for appointment of pro bono counsel, Plaintiff filed his motion to amend; that motion is currently before this Court. See Docket Entry No. 62-1.

In his amended complaint, Plaintiff asserted that his arrest must have been conducted without probable cause simply because he told the arresting officer that he did "nothing wrong" and he and Spence declined to give the police officers consent to search the SUV when the SUV was stopped. See Docket Entry No. 62-1, at 2. In addition, he added a claim asserting that he was visually strip-searched prior to being processed into a jail cell.[2] See id. at 3-4. He also alleged that "allowing Salamone to go free violated [his] equal [protection] rights" since she "confessed to using stolen credit cards," and that fact could have been sufficient for the police to file at least some charges against

---

[2] Plaintiff also asserted "verbal harassment" maintaining that the officers referred to him as "Johnny Cockerin." Docket Entry No. 62-1, at 7-8.

7

her.  Id. at 9-10.[3]  Plaintiff kept insisting that the police were racially biased in its law enforcement.  See id. at 10.  In conjunction with these allegations, Plaintiff reiterated his already-dismissed conspiracy challenges against the prosecutor and defense counsel.[4]  See id. at 17.

Since the standard employed in a sua sponte screening was already detailed by this Court in its opinion docketed as Docket Entry No. 6, at 4-6, another recital is not needed.  Rather, this Court find it warranted to recite the point stated in its decision docketed as Docket Entry No. 84, at 13, i.e., that Plaintiff's statements made in Johnson-II and the exhibits relied upon are subject to judicial notice in the instant matter.  Hence, the Court now turns to analyzing the claims in Plaintiff's amended complaint, while reflecting on the same challenges, if they were stated in the original complaint.

Plaintiff's false arrest challenges appear facially meritless for the reasons already detailed in Johnson-II:

---

[3] While Plaintiff now asserts that Hill advised the police that "Salamone . . . performed several transactions at Walmart, Target and Macy's," Docket Entry No. 62-1, at 9, the record upon which Plaintiff relied in Johnson-II indicates that both Hill and Salamone made statements only as to Salamone's single withdrawal.

[4] He also reiterated and paraphrased all aforesaid allegations a number of times and, in addition, recited the claims already dismissed by this Court with prejudice upon its sua sponte screening of the original complaint.

8

> Plaintiff's other claim, asserting that the SUV was stopped and he was arrested without probable cause is contradicted by the very exhibits upon which he relied in his original and amended pleadings filed here, and in his motions. "The proper inquiry in a Section 1983 claim based on false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." <u>Dowling v. City of Phila</u>., 855 F.2d 136, 141 (3d Cir. 1988). "When an officer has probable cause to believe a person committed even a minor crime, the balancing of private and public interests is not in doubt and the arrest is constitutionally reasonable." <u>Virginia v. Moore</u>, 553 U.S. 164, 171 (2008). Correspondingly, a plaintiff must state "the facts showing that, under the circumstances within the officer's knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." <u>Mosley v. Wilson</u>, 102 F.3d 85, 94-5 (3d Cir. 1996); <u>accord</u> <u>Revell v. Port Authority of New York, New Jersey</u>, 598 F. 3d 128, 137 n.16 (3d Cir. 2010). Here, Plaintiff's exhibits show that the police officers stopped the SUV and searched its occupants on the basis of the information provided by the Wawa store manager about Hill's attempt to commit fraudulent purchases. That information, in and by itself, already supplied a sufficient probable cause for the stop and search. When the search produced a large amount of cash, stolen credit cards, fraudulent driver licenses and Social Security documents issued to other persons' names, that discovery, in and by itself, supplied a sufficient probable cause for arrest of all four occupants, as well as for investigation of the SUV. Thus, Plaintiff's [<u>Johnson-II</u>] exhibits filed here negate his false arrest challenges. <u>Accord</u> <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1374 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim. Allegations in a complaint or relied upon in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse") (quoting <u>Jackson v. Marion County</u>, 66 F.3d 151, 153 (7th Cir. 1995)).

Docket Entry No. 84, at 17,18-19 (original brackets and ellipses omitted).

9

Hence, these false arrest claims, which initially proceeded past the sua sponte screening stage on the grounds of Plaintiff's averment that the SUV was stopped and its occupants were searched and arrested for no reason whatsoever, are insufficient to meet the Iqbal test.[5]

Plaintiff's somewhat related new claim, asserting a violation of his rights on the basis of his visual strip-search upon his processing to a jail cell is, too, facially meritless.[6]

---

[5] Plaintiff's "racial profiling" allegations asserted in connection with the stop of the SUV, as well as search and detention of the occupants, is devoid of any facts or logic, since Salamone, a Caucasian, was in the SUV the police stopped, and she was searched and detained for investigation as were the other African-American occupants of the SUV. Moreover, Plaintiff's claim that the SUV was searched without probable cause is, too, devoid of any facts or logic, since the record in Johnson-II indicates that the SUV was searched upon a valid warrant which, in and by itself, supplied probable cause.

[6] Analogously, Plaintiff's assertion that the police referred to him as "Johnny Cockerin," and Plaintiff perceived it as a "racial slur," fails to state a cognizable claim. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (D.N.J. Dec. 8, 2005) ("Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)); see also Robinson v. Taylor, 204 Fed. Appx. 155, 156 (3d Cir. 2006)("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eigth Amendment.") Simply put, "[t]he Constitution protects rights and freedoms, but it does not enshrine a code of personal civility." Hogan v. Twp. of Haddon, 2006 U.S. Dist. LEXIS 87200, at *34 (D.N.J. 2006), aff'd, 278 F. App'x 98, 103 (3d Cir. 2008).

10

See Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296 (3d Cir. 2010), aff'd 132 S. Ct. 1510 (2012).

Plaintiff's selective enforcement claim also now appears facially deficient in light of his exhibits in Johnson-II.[7] While selective prosecution and selective enforcement are different Fourteenth Amendment claims, see Dique v. New Jersey State Police, 603 F.3d 181, 188 n.10 (3d Cir. 2010); Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005), the substantive standards governing these claims "are virtually identical." Davis v. Malitzki, 451 F. App'x 228, 234, n.11 (3d Cir. 2011).

> Selective prosecution is a form of discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since Yick Wo v. Hopkins, 118 U.S. 356 (1886), which held officials liable for "illegal discrimination" when they "applied and administered" a facially neutral law "with an evil eye and an unequal hand." Two factors must be proved: first, that persons similarly situated were not prosecuted; second, that the decision to prosecute was made on the basis of an unjustifiable standard, such as race . . . ." United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989) (per curiam).

---

[7] To the extent Plaintiff attempted to assert a claim on the basis of the charges filed against Hill or Spence, Plaintiff is without standing to raise such challenges. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990); Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 (1998). The sole equal protection claim Plaintiff may raise is that of him being charged while Salamone was, allegedly, released.

Id. at 234; accord Hill, 411 F.3d at 125 (selective enforcement occurs when there are similarly situated persons against whom the law was not enforced, and the official's conduct is motivated by an "unjustifiable standard"); see also Dique v. N.J. State Police, 603 F.3d 181, 183, n.5 (3d Cir. 2010) (to establish a selective-enforcement claim, a plaintiff must demonstrate that he was treated differently from other *similarly situated* individuals, and that this selective treatment was based on an unjustifiable standard, such as race).

The record in Johnson-II demonstrates that Plaintiff's situation cannot be compared to that of Salamone. This record shows that the police were informed, not only by Salamone but also by Hill, that Plaintiff was the *key* player who stole the credit and debit cards, produced false identification documents and pocketed the illegal profit, while Salamone conducted one withdrawal with a credit card she suspected to be stolen and handed the illegal proceeds to Plaintiff, Hill and Spence. Therefore, Salamone was not similarly situated to Plaintiff; moreover, she was not similarly situated either to Hill or Spence, who – according to Hill – were the other two key players and were engaged in lengthy, elaborate and extensive schemes.[8]

---

[8] Plaintiff's submissions in Johnson-II and statements made in his amended complaint here suggest Plaintiff's opinion that the police could or should have investigated Hill and/or Salamone's statements as to the limited scope of Salamone's

12

Hence, the police – or the prosecutor – exercised their discretion in an unbiased way when they concluded that Salamone's involvement was too insignificant to charge her with a crime. Plaintiff's selective enforcement claim, as elaborated upon now in <u>Johnson-II</u>, fails to meet the <u>Iqbal</u> test.

By the same token, Plaintiff's previously dismissed conspiracy challenge as to Plaintiff's attorney, his prosecutor and the presiding state judge, which Plaintiff reasserts, remains meritless. As this Court already explained, in order to prevail on a conspiracy claim under §1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. <u>See</u> <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238, 245 (3d Cir.1999).[9] Here, Plaintiff's original and amended pleading fail to allege facts showing a conspiracy. Rather, they offer only Plaintiff's deducements that

---

involvement. However, the equal protection requirements do not obligate state actors to seek evidence establishing that two persons who appear differently situated might be similar situated. In other words, the governing test is objective and it turns on the information known to the state actors at the time of their conduct, not on the hypothetical information that might or might not be discovered. <u>Cf.</u> <u>Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.</u>, 410 U.S. 719, 731(1973) (legal "adjudication cannot rest on any such 'house that Jack built' foundation").

[9] Moreover, "the reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.'" <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir.1997) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).

13

the actions of his attorney, the prosecutor and the judge had to be conspiratorial. See Docket Entry No. 84, at 9, 15-17 (setting forth the governing legal test in detail and explaining the invalidity of Plaintiff's deducements under that test); accord Iqbal, 129 S. Ct. at 1950 ("[the allegation was] not sufficient to state a claim of . . . conspiracy because this allegation was 'not only compatible with, but more likely explained by,' lawful behavior and therefore did not 'plausibly suggest' an unlawful agreement") (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 565-67 (2007)). Plaintiff's re-asserted conspiracy claims fail to meet the Iqbal test.

As of now, read jointly with the entries Plaintiff docketed in Johnson-II, Plaintiff's amended complaint fails to state a single cognizable claim and, in addition, renders his claims that survived the sua sponte screening of his original complaint facially meritless. Therefore, Plaintiff's motion to amend will be granted, and his amended and original complaints will be dismissed now in their entirety.

All of Plaintiff's claims already dismissed by this Court upon sua sponte screening will be re-dismissed once again, with prejudice. Plaintiff will be barred from re-raising them anew; the Court warns Plaintiff that his failure to comply with that bar might result in sanctions, if warranted.

While Plaintiff's false arrest and selective enforcement challenges also appear facially meritless in light of Johnson-II, this Court – solely out of an abundance of caution, – will allow Plaintiff one final opportunity to show cause as to why these false arrest and selective enforcement challenges should not be conclusively dismissed for failure to state a claim. Plaintiff will be directed to make solely factual assertions that are consistent with the facts he offered into the record in Johnson-II.

That conclusion prompts this Court to revisit the issue of appointment of Plaintiff's counsel.

> Under Tabron, the presence of a potentially meritorious claim is a threshold requirement for appointment of counsel. See Tabron, 6 F.3d at 156; Maclin [v. Freake], 650 F.2d [885], 887 [ (7th Cir. 1981)]; Spears [v. United States], 266 F. Supp. [22,] 25-26 [(S.D. W. Va. 1967)]; accord Parham [v. Johnson], 126 F.3d [454,] 457 [(3d Cir. 1997)] (appointment of counsel is warranted only if the pleading contains "some merit in fact and law"). This gateway requirement is closely intertwined with the prohibition on appointed counsel's maintaining frivolous claims. "Under Anders v. California, 386 U.S. 738 (1967), if court-appointed 'counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.'" United States v. Parker, 487 F. App'x 41 (3d Cir. July 16, 2012) (quoting Anders, 386 U.S. at 744).

Bacon v. Mandell, 2012 U.S. Dist. LEXIS 132231, at *40-41 (D.N.J. Sept. 14, 2012)

Thus, until and unless the Court satisfies itself that Plaintiff stated a viable claim under Iqbal, continuation of

counsel's appointment appears unwarranted.[10]  See Bacon v. Mandell, 2013 U.S. Dist. LEXIS 162144, at *18-19 (D.N.J. Nov. 14, 2013).  Hence, it will be suspended, subject to reinstatement in the event Plaintiff shows cause as to why his false arrest and selective enforcement challenges should not be conclusively dismissed for failure to state a claim.

Judge Williams' Order, see Docket Entry No. 86, allowing Defendants to conduct Plaintiff's deposition, will be stayed, to prevent potentially unwarranted expenses and efforts on both sides.  Such stay will be subject to reactivation in the event Plaintiff shows cause as to why his false arrest and selective enforcement challenges should not be conclusively dismissed.[11]

An appropriate Order follows.

                                      s/Renée Marie Bumb
                                      **RENÉE MARIE BUMB**

---

[10] The Court takes this opportunity to note its concern since Plaintiff was less than forthcoming with both this Court and Judge Williams when he concealed the facts he alleged in Johnson-II and paraphrased his false arrest and selective enforcement claims in a fashion inviting this Court and Judge Williams to construe them as meeting the Iqbal requirement.

[11] This matter will be administratively terminated, subject to reopening upon receipt of Plaintiff's response to the Court's Order to Show Cause.  See Papotto v. Hartford Life & Accident Ins. Co., 2013 U.S. App. LEXIS 19660, at *26 (3d Cir. N.J. Sept. 26, 2013) ("administrative closings . . . are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, is likely to remain moribund").

**United States District Judge**

Dated: January 10, 2014